# 7464

S T A T E   O F   L O U I S I A N A

### PARISH OF ORLEANS

-------------------------------------------------

| | | |
|---|---|---|
| MRS. MARIE LOUISE BERNER, Widow of John J. Batt, | : | No. 7464, |
| versus | : | COURT OF APPEAL |
| HORTMAN COMPANY, Inc. | : | |

-------------------------------------

*Judgment affirmed* 7464

Max Dinkelspiel, Judge.

------------- --------------------

Plaintiff sues the defendant for this, substantially:

That she owned a double two-story frame slated-roof dwelling in the Sixth District of this city, in square bounded by Broadway, Spruce, Pine and Panola streets; that on or about the 5th of July, 1915, the Jackson Building & Loan Association, a corporation under the laws of this state, contracted with the then firm of the Hortman Company to erect a dwelling for plaintiff for the sum of $4850.00, and, amongst other things, the specification filed in the record in this case was "Build basement of concrete as shown on plan, using one part/cement, 3 parts of sand and 5 parts of gravel, using 3 pounds Hercules waterproofing, or equal, to each sack of cement on basement floor and all basement walls below the ground lines, providing drains as shown in basement plan. Basement must be guaranteed against leaks from water for a period of one year." She avers further that the basement which the defendant corporation obligated itself in said contract to construct for your petitioner, as aforesaid, was never in truth and in fact completed at the time of the acceptance of the improvements, but avers, to the contrary, that defendant, about six months or more thereafter, endeavored to cure the defects in the construction thereof, and that the previous pretended completion occurred during the last week of September and the first week of October, 1915, so that the one year's maintenance stipulated in said contract and the accompanying specifications had not yet elapsed; that said basement had never given satisfaction, but

on the contrary, has never been free against leaks from water, and during rainy weather has contained water forced from the outside into the basement at times to a depth of several feet; that plaintiff made repeated and persistent complaints to the defendant to remedy the defects in said basement, to comply with its contract and the terms of the specifications, and that the defendant frequently patched the basement and at one time laid an additional cement flooring over the one originally there, but all to no avail, and without in any manner remedying the conditions complained of; that she is informed and believes that the defects in said basement cannot be remedied to comply with the contract made by the defendant, unless and until the hot water heaters and wooden partitions are removed, and the doing of other such things, at a cost to your petitioner of $440.00, and for this sum plaintiff prays for judgment.

The answer of the defendant substantially admits that on or about July 6, 1915, it entered into a contract with the Jackson Building & Loan Association to construct for plaintiff the double two-story dwelling, with basement, for the sum of $4850.00, and further, that the contract entered into by it to erect the dwelling prescribed above provides that it should construct a concrete basement for said basement, and admits that it guaranteed said basement against leaks from the outside for a period of one year after its completion. It admits further that it is responsible for the construction, and is willing and has been willing to remedy any defects, if there were any, in the construction of the basement. Defendant further contends that the basement constructed for plaintiff was completed in accordance with the contract and specification; that after said concrete basement had been completed, the Jackson Building & Loan Association, acting for plaintiff, found that it had been constructed according to the contract and specifications, accepted same as satisfactory in October 1915, and that

sometime after the acceptance of said basement by plaintiff's representative plaintiff complained that it was defective, that water came in from the outside through the concrete of said basement, and that defendant responded to this complaint and repaired some defects on each side of said basement which had been caused by the installing of the plumbing system after the completion, but that plaintiff continued to complain, and that, in order to remedy any latent defect that might exist in said basement, if any such defect did exist - which defendant denies - but in order to satisfy plaintiff, defendant laid another flooring in said basement, for which really there was no necessity, and still the plaintiff complained of leakage of the basement on one side, notwithstanding the basement is divided only by a wooden partition and both sides are identical in construction; that having assured plaintiff that it could not find the defect of which she complained, after repeated inspections of the basement, and that it would willingly remedy any defect that plaintiff would point out, plaintiff failed to point out any defect in said basement; therefore defendant asserts and avers that said basement has been completed in accordance with the contract and specifications, and there is no defect in the construction thereof.

Defendant further states that after very heavy rains it inspected the basement repeatedly and found no water therein, except on one single occasion, when they found that the check-valve, which would admit any water that would back up when the main sewer is full if left open, was open, so that water could come into the basement through said valve after heavy rains, and it avers that if any water was found in said basement after those rains, that that water must have come in through this check-valve, which was left open, and that it did not come in through any defect in the construction of said basement. Hence defendant prays for judgment in its favor.

The testimony of the plaintiff, Mrs. Batt, is corroborated by the testimony of Leonard M. Goll, Robert F. Askew and E. S. Melville. The latter gentleman's occupation, as stated by him, at page 12 of the testimony, is "water paving", and he had been engaged in that business for ten years in the City of New Orleans. He had examined the basement in the premises 2008-2010 Broadway, owned by the plaintiff, and the first examination was in the month of June, 1916, and lastly just before this suit was filed. On the last examination he found that the basement showed dampness. There had been some rain on the Saturday prior to the examination, which occurred on the Sunday following. He goes on to explain:

"Q: What was the condition of the concrete or shillinger floor of that basement; was it all intact, or did it show any evidence of breakage?

"A: It was not bonded to the original concrete base."

The court asked him to explain the answer, and he does so: "Well, there is a superficial top, if you wish me to explain, of cement, put on the original base. They build the basement first, and then put in this coating to repel the water. Whenever the water gets under this coating, it has that force and it pushes it up from the concrete base; in other words, it makes it sound hollow." And he goes on to say "It was not water-tight."

He was asked: "Do you know, or have you figured, what it would cost to put that basement in a water-tight condition?" and he answered: "In 1916 I made a price of $440.00, but it would cost more now." The witness goes on to say: "There were many cracks in every direction and the whole thing would have to come up." This question was put to the witness: "Would the fact that the Claiborne Avenue Canal fills up to the top on every heavy rain, affect the pressure at all?" He answered: "Not materially". On page 15 he was asked: "If the specifi-

■

275

cation was lived up to, ought that to be a dry cellar?" He answered: "Yes, sir."

In answer to a question by the judge, at page 16, this witness goes on:

"The superficial coating is completely gone. The water has pushed it up, and would have to be moved. The wall running parallel with Broadway is cracked in two places. This settlement crosses that wall and would have to be rebuilt, reinforced with a new wall on the inside, heavily reinforced with steel. The reason for reinforcing this wall is to overcome the action, that is the expansion and contraction due to temperature or movement of the building."

"Q: Suppose this work had been done according to the specification, would this steel reinforcement — would you have to have that, if it was done according to specifications?

"A: If there is none in there, it should have been in there."

All the witnesses, without going into as many details as the witness Melville, contractor, did testify substantially to the same results.

Now, the defendant himself, together with one Walter T. Bushnell, testified substantially that the basement was completed in accordance with the contract, was accepted by the building company, as such, that frequent complaints had been made, that in every one they had endeavored to and did, in their opinion, rectify and correct, and yet the complaints continued so long that, finding it impossible to do anything further, they refused to comply with the demands of the plaintiff.

We are satisfied, from an inspection of this record, and

from the evidence and the facts as adduced, that one of the real causes, if not the main cause of the trouble, was seepage, and that, as described by the Century Dictionary, is: "Percolation; oozing fluid or moisture; also, the amount of a fluid that percolates: as, the seepage is great."

The judge a quo, today the eldest judge on the Civil District Court, with large experience, erudite knowledge; a close observer and hard student, having seen and heard the witnesses, has determined in his judgment that plaintiff's complaints were just, and we quite agree with him.

JUDGMENT AFFIRMED.